*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEISHAUN ANTHONY MACK,

Defendant-Appellant.

UNPUBLISHED
December 08, 2025
10:16 AM

No. 374186
Muskegon Circuit Court
LC No. 2024-001254-FH

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

In this criminal interlocutory appeal, defendant, Keishaun Mack, appeals by delayed leave granted[1] the trial court's order denying his motion to suppress. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

While conducting an undercover investigation, Detective Shanda Dziachan of the City of Muskegon Police Department purchased narcotics from parolee Ezeree Crowley and arrested him. On January 25, 2024, officers conducted a search of Ezeree's registered address on parole. When the parole agent and officers knocked on the door of the home, Mack answered. After the officers informed Mack that they were present to conduct a parole search, Mack stated that he had to put the dog away and shut the front door. Detective William Fry of the Michigan State Police then heard "noises inconsistent with putting away a dog" and more like "stuff" was being moved inside the home. Walking around the porch to the very front of the home, Detective Fry stood on a wooden chair directly under a window to see inside. He observed Mack "next to a black tote holding a clear plastic bag with an unknown white substance."

---

[1] *People v Mack*, unpublished order of the Court of Appeals, entered July 25, 2025 (Docket No. 374186).

Shortly thereafter, homeowner Franchelle Crowley arrived, unlocked the front door, and allowed the officers to enter the home. Franchelle stated that Ezeree stayed on a cot in the living room just inside the front door and gave the officers permission to search that area.

When asked about rooms in the front of the home where Detective Fry had observed Mack, Franchelle stated that that was her bedroom and an attached bathroom. The bathroom was being remodeled and used as a storage room. Franchelle insisted that the officers could only search the parolee's area of control and objected to the officers searching other areas of her home. However, Parole Agent Samantha VanderWagen asserted that the officers had the ability to search the entire residence because Ezeree had permission to reside in the house and had access to the whole house. Mack did not interject in the conversation or object to the search on his own behalf. However, he asked the parole agent, "Ma'am, how are you checking her stuff?" During their search, the officers located and searched the tote, which contained a significant quantity of controlled substances and evidence of drug manufacturing, such as blenders and food coloring.

Mack was arrested and charged as a fourth-offense habitual offender, MCL 769.12, with possession with intent to deliver 50 or more but less than 450 grams of the controlled substance fentanyl, MCL 333.7401(2)(a)(*iii*), as a second or subsequent offense, MCL 333.7413(1); possession with intent to deliver 50 or more but less than 450 grams of the controlled substance cocaine, MCL 333.7401(2)(a)(*iii*), as a second or subsequent offense, MCL 333.7413(1); and possession with intent to deliver 50 or more but less than 450 grams of the controlled substance commonly known as ecstasy or MDMA, MCL 333.7401(2)(b)(*i*), as a second or subsequent offense, MCL 333.7413(1). Mack moved to suppress the evidence found in the home.

Following a hearing, the court denied the motion, finding that Mack lacked standing because he was only an "occasional overnight guest" and that his conduct at the time of the search showed that he did not have a subjective expectation of privacy in the home.

## II. STANDING

### A. STANDARD OF REVIEW

Mack argues that the trial court erred by denying the motion to suppress and concluding that he did not have standing to challenge the search. "Findings of fact regarding a motion to suppress evidence are reviewed for clear error, and the findings will be affirmed unless the appellate court is left with a definite and firm conviction that the trial court made a mistake." *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021) (citation omitted). The court's "ultimate ruling on the motion is reviewed de novo." *Id*.

### B. ANALYSIS

"Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Armstrong*, 344 Mich App 286, 295; 1 NW3d 299 (2022). See US Const, Am IV; Const 1963, art 1, § 11. "The lawfulness of a search or seizure depends on its reasonableness." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted). "Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions." *Id*., citing *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). Accordingly, "to show that a search was in

compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Moorman*, 331 Mich App at 485.

The right to be free from unreasonable searches and seizures is personal and may not be invoked by third parties. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *Id*. "A court determines the issue of standing by examining the totality of the circumstances, and a defendant bears the burden of establishing that he has standing." *People v Mahdi*, 317 Mich App 446, 459; 894 NW2d 732 (2016). Relevant factors include

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. quotation marks and citation omitted.]

Overnight guests at a residence may have a reasonable expectation of privacy sufficient to establish standing. *People v Parker*, 230 Mich App 337, 340; 584 NW2d 336 (1998). But mere visitors and those present for business transactions do not have standing to challenge a search. *Minnesota v Carter*, 525 US 83, 90-91; 119 S Ct 469; 142 L Ed 2d 373 (1998). The amount of time at a place, the purpose of the visit, and the relationship with the owner are relevant considerations to whether an individual has a cognizable privacy interest under the Fourth Amendment. *Id*.

We agree with the trial court that, under the totality of the circumstances, Mack did not have standing to challenge the search of the home. At the hearing, Franchelle testified about her relationship with Mack. When asked if Mack was her boyfriend, Franchelle responded: "No. He's a—he's a friend, sometimes a lover, not a boyfriend, though." She explained that Mack spent the night at Franchelle's house "a couple times a week," including the night before the search. Mack had gone to work that day and arrived just before the officers had arrived. Franchelle testified that Mack had a key to the home and permission to be in her bedroom. She added that Mack was also working as a contractor, doing a "complete remodel" of the home and that he had a dresser of clothes in her bedroom. Although the trial court recognized inconsistencies in Franchelle's testimony regarding how regularly Mack stayed at the residence, the trial court found that he was an "occasional overnight guest." When an issue involves the credibility of the witness whose testimony is in conflict, the trial court's resolution of a factual issue is entitled to deference. *People v Geno*, 261 Mich App 624, 629; 683 NW2d 687 (2004). Accordingly, as found by the trial court, the record does not establish that Mack intended to stay at the home that evening, only that he had spent the previous night there and had returned after work. Because it is not clear that Mack was an overnight guest, the trial court properly looked to several factors to determine whether Mack had a reasonable expectation of privacy in the home, and in particular Franchelle's bedroom and the attached bathroom or storage room. See *Mahdi*, 317 Mich App at 459.

Franchelle's description of her relationship with Mack was ambiguous, describing him as a friend, sometimes lover, but not a boyfriend. She also testified that Mack worked on her home as a contractor. However, there is no dispute that Mack did not own the home and that both Mack and Franchelle stated to the officers that defendant did not live there. The ambiguous personal and professional relationship, as well as the fact that Mack did not own the home or claim it as his residence, suggest that he did not have standing. Although Mack exercised some control by closing the door on the officers when they first arrived, he ultimately deferred to Franchelle about allowing the officers inside and said nothing when she consented to searches of certain areas. Accordingly, Mack was not exercising control over the home.

As the trial court found, Mack repeatedly denied any possessory interest in the home or any particular area by stating that it was Franchelle's house, "her" bedroom, and "her stuff." Mack never objected to the search on his own behalf but argued only that the officers could not search "her stuff" and gave his opinion on the scope of the parole search. Mack's actions suggested that he did not have a subjective expectation of privacy or the ability to object to the search. Particularly with regard to the storage room, Mack failed to establish that he had any expectation of privacy in, or even used, that area.

Considering the factors relevant to standing in the Fourth Amendment context, Mack did not have a reasonable expectation of privacy in the home. Because the trial court properly found that Mack did not have standing, we need not address the merits of the Fourth Amendment claim.

Affirmed.


/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney